Edwin I. Aimufua, Esq., SBN: 186986
LAW OFFICES OF EDWIN I. AIMUFUA
17000 Ventura Blvd, Suite 201
Encino, California 91316
(818) 855-1118 (Telephone)
(818) 855-1101 (Facsimile)
eia@aimufualaw.com

*Attorneys for Plaintiffs and on behalf*
*of all others similarly situated*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JENNIFER OH, CHRISTINA BOHNSTEDT, BROOKE HOFFMAN, MICAH BAILEY, LINDA SOLTIS, DERRICK SMITH, KALEB FAJARADO, GWENDOLYN RAYMOND, ANTHONY HERRERA, SHILOH IRVIN, MATTHEW BRUDNICKI, JAMES ROCHE, LINDSEY LILJENQUIST, RYAN MCVEY, BETHANY LANGE, ANTHONY JORDAN ALLEN PRICE, RASHON KYLE, HAMAD HAMDI, JENNIFER JOHNSTON, JAMES TROXEL, MAUREEN CARNEY, MICHAEL SPANO, TORIAHNA BONDS, GABRIEL GARCIA-FRAIRE, SHANE HANRAHAN, DAN McCULLOUGH, KEVIN COLLINS, KRISTEN ZINSELMEIER, JAMES COOPER ROSEANNE HANSEN, DUSTY DERIGO, NICOLE FRANKLIN, DAKOTA JONES, JOHN RAY, JONATHAN YAGEL, ANGEL GONZALES, ELIJAH HAYDARY, MIKE ESTRADA, on behalf of themselves and all others similarly situated;

               Plaintiffs,

vs.

SCRAM OF CALIFORNIA, Inc., a California Corporation; ALCOHOL MONITORING SYSTEMS, INC., a Delaware Corporation; LOS ANGELES ALCOHOL MONITORING Inc., a California Entity; FLORIDA SAFETY COUNCIL, Inc., a Florida Entity; UNITED SAFETY COUNCIL, Inc., a Florida Entity; ETOH MONITORING, L.L.C., a Louisiana Corporation; RECOVERY SOLUTIONS CONSULTING & TRAINING CORP, a private Entity; RECOVERY HEALTHCARE CORPORATION, A Texas Corporation;
          [continued on page 2]

Case No.:

**PLAINTIFFS CLASS CIVIL RIGHTS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

1  TOTAL COURT SERVICES OF NEVADA,                )
   LLC., a Nevada Corporation: SENTINEL           )
2  OFFENDERS SERVICES, LLC., a Delaware           )
   Corporation; SCRAM SYSTEMS OF                  )
3  ILLINOIS, Inc., an Illinois Entity; COURT      )
   PROGRAMS OF NORTH FLORIDA, LLC, a              )
4  Florida Entity; HOUSE ARREST SERVICES,         )
   Inc., Unknown Entity; MIDWEST ADP, INC.,       )
5  a Missouri Entity; WISCONSIN LOCK &            )
   LOAD ELECTRONIC MONITORING                     )
6  SOLUTIONS, LLC, a Wisconsin Corporation;       )
   MIDATLANTIC MONITORING SERVICES,               )
7  L.L.C., a Pennsylvania Corporation; ROCKY      )
   MOUNTAIN OFFENDER MANAGEMENT                   )
8  SYSTEMS, LLC., a Colorado Corporation;         )
   ICU MONITORING INC., an Indiana Entity;        )
9  EASTERN MISSOURI ALTERNATIVE                   )
   SENTENCING SERVICES, Inc., a Missouri          )
10 Corporation; ADVANTAGE SENTENCING              )
   ALTERNATIVE PROGRAMS, Inc., a                  )
11 Maryland Corporation; PRONTOTRAK, Inc.,        )
   a Georgia Corporation; TOTAL COURT             )
12 SERVICES OF INDIANA, L.L.C., an Indiana        )
   Corporation; PRIDE INTERGRATED                 )
13 SERVICE, Inc., a Georgia Corporation;          )
   NINEHOUSE MEDIA, INC., an Illinois             )
14 Corporation; LEADERS IN COMMUNITY              )
   ALTERNATIVES, INC., a California               )
15 Corporation; and DOES 1-100, inclusive.        )
                                                  )
16                        Defendants.             )

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. § 1983

1

## CLASS ACTION COMPLAINT

2        Plaintiffs, Jennifer Oh, Christina Bohnstedt, Brooke Hoffman, Micah Bailey,

3  Linda Soltis, Derrick Smith, Kaleb Fajarado, Gwendolyn Raymond, Anthony

4  Herrera, James Roche, Ryan McVey, Matthew Brudnicki, Lindsey Liljenquist,

5  Bethany Lange, Allen Price, Shiloh Irvin, Hamad Hamdi, Anthony Jordan, Jennifer

6  Johnston, Rashon Kyle, Kevin Collins, Michael Spano, James Troxel, Maureen

7  Carney, Gabriel Garcia-Fraire, Toriahna Bonds, Shane Hanrahan, Kristen

8  Zinselmeier James Cooper, Roseanne Hansen, Dusty Derigo, Nicole Franklin,

9  Dakota Jones, John Ray, Jonathan Yagel, Angel Gonzeles, Elijah Haydary, and

10 Mike Estrada (hereafter collectively "Class Plaintiffs") do bring this class action

11 complaint against the Defendants, and each of them, for the intentional, reckless,

12 and complete disregard of the Plaintiffs', and the Classes' well established rights

13 that are guaranteed by the federal Constitution of the United States of America.

14        On behalf of themselves, others similarly situated and the proposed classes

15 of the Defendants' customers, Plaintiffs seek damages, restitution and injunctive

16 relief against Defendants for the false advertising of their transdermal monitoring

17 service. For their class action complaint, Plaintiffs allege as follows upon personal

18 knowledge as to themselves and their own acts and experiences, and as to all other

19 matters, upon information and belief, including investigations conducted by their

20 attorneys.

21        Plaintiffs, and the classes they seek to represent, bring this action against the

22 Defendants to protest a grave injustice to stop corporate intrusion upon the United

23 States Constitution, to ensure that the rights of the People shall not be abridged.

24 Plaintiffs, and the Class, challenge and seek to enforce and enjoin the Defendants,

25 and each of them, to adhere to the standards for which the Constitution is clearly

26 defined for, and as, that applies to all citizens of the territory thereof.

27

28

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. § 1983

1    The SCRAM Device has become an increasingly utilized alcohol testing
2    device in the criminal justice and addiction treatment industries throughout the
3    United States. Defendants marketed and sold, and continue to market and sell, their
4    SCRAM Devices to various drug and alcohol monitoring companies in these
5    industries. The alcohol monitoring companies provide monitoring services to any
6    person, charged with a DUI criminal offense, oftentimes renting out the SCRAM
7    Devices and acting as third-party supervisors of the users' test results.

8    In marketing and selling their SCRAM Devices to other alcohol monitoring
9    companies and consumers, Defendants portrayed, and continue to portray, their
10   SCRAM Devices as being admissible and certified by the courts.
11   In spite of these representations, the SCRAM Device frequently return error
12   messages, false positives, false tampers, and even false removals from the
13   customers' leg, and the Defendants actively conceal these malfunctions from the
14   courts and the public, at large.

15   Once a person is suspected of a consumption of alcohol, a report is then
16   generated, and sent to the corporate offices of the alcohol monitoring companies
17   who are the Defendants herein, who then in turn, (as Defendant AMS does), have a
18   minimum wage school student, with inadequate training and no formal education
19   in this field, read the alleged report and is then given instructions from the AMS
20   corporate figures to render an opinion that the wearer consumed alcohol, tampered
21   with the SCRAM Device, or did both. Defendant AMS does not send any of their
22   employees for any training or certification for a primary reason. Because there
23   does not exist any form of training, certification, or courses that teaches a person to
24   read a graph to makes a determination if the wearer consumed alcohol, came into
25   contact with products on the market that contain alcohol, or used hair spray.
26   Defendant AMS then transmits their report to the co-Defendant SCRAM who then
27   in turn reads the report. And once reviewed in the Defendants corporate office in
28   Los Angeles, the report is then sent to the third-party alcohol monitoring provider,

who receives the SCRAM report and then sends that same report to the Court, the Prosecutor, and finally, to the Defense Attorney. This process of transmitting and sending the report from party to party, creates delays in turning over exculpatory evidence, and the general overall turnaround time is often a month or two, making it impossible, or at the very least, less credible for the DUI Defendant to then take an independent DUI test, that is admissible in Court and which refutes the SCRAM report.

As a result of Defendants' conduct, the SCRAM wearer is not notified in real time that the wearer allegedly violated the terms of their DUI criminal case, their probation and bond conditions. Once the SCRAM client is notified about the alleged violations, weeks, if not months have gone by depriving the SCRAM client the right to have a blood test done which by all accounts produces results that cannot be manipulated. Often times with a majority of the Plaintiffs, and the Class, when a person is suspected of a DUI criminal offense, the police will often take the suspected drunk driver to a hospital to have blood drawn from their person to have an accurate test done. After so many hours, alcohol leaves a person's blood stream and cannot be determined whether or not the person, like the SCRAM clients have consumed alcohol, on the day in question.

Plaintiffs, on behalf of themselves and on behalf of a Class of similarly situated individuals, bring this lawsuit seeking injunctive relief, actual damages, and restitution, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

1.    This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) and (d), because: (i) at least one member of the putative class is a citizen of a state different from any Defendant; (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs; and (iii) none of the exceptions under that subsection applies to the instant action.

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. § 1983

2.     This Court also has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises in part under 42 U.S.C. § 1983, 1985, and 1988(c). This Court may exercise supplemental jurisdiction over the state law claims alleged pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in the Central District of California because the Defendants are subject to personal jurisdiction in this District, as Defendants Scram of California, Inc., ("SCRAM") and Alcohol Monitoring Systems, Inc., ("AMS") have their headquarters located in this District, the Defendants transact business in this District. All SCRAM and AMS reports, emanates from this District, then transmitted to third party providers around the country.  The said Defendants' alleged misconduct arises from this District, and a substantial part of the events in this action occurred in this District. The Defendants SCRAM and AMS also transmit the delayed reports from their central offices located in Los Angeles.

## PARTIES

4.     Plaintiff Jennifer Oh a citizen of the State of California.

5.     Plaintiff Christina Bohnstedt is a citizen State of Minnesota.

6.     Plaintiff Brooke Hoffman is citizen of the State of South Dakota.

7.     Plaintiff Micah Bailey is a citizen of the State of Louisiana.

8.     Plaintiff Linda Soltis is a citizen of the State of Ohio.

9.     Plaintiff Derrick Smith is a citizen of the State of Texas.

10.    Plaintiff Kaleb Fajarado is a citizen of the State of Texas.

11.    Plaintiff Gwendolyn Raymond is a citizen of the State of Nevada.

12.    Plaintiff Anthony Herrera is a citizen of the State of Oregon.

13.    Plaintiff Shiloh Irvin is a citizen of the State of Georgia.

14.    Plaintiff Matthew Brudnicki is a citizen of the State of Illinois.

15.    Plaintiff James Roche is a citizen of the State of Florida.

16.    Plaintiff Lindsey Liljenquist is a citizen of the State of North Dakota.

17.  Plaintiff Ryan McVey is a citizen of the State of Wisconsin.

18.  Plaintiff Bethany Lange is a citizen of the State of New York.

19.  Plaintiff Allen Price is a citizen of the State of Maryland.

20.  Plaintiff Anthony Jordan is a citizen of the State of Michigan.

21.  Plaintiff Jennifer Johnston is a citizen of the State of Missouri.

22.  Plaintiff Rashon Kyle is a citizen of the State of California.

23.  Plaintiff Kevin Collins is a citizen of the State of West Virginia.

23.  Plaintiff Michael Spano is a citizen of the State of New York.

24.  Plaintiff James Troxel is a citizen of the State of Maryland.

25.  Plaintiff Maureen Carney is a citizen of the State of Maryland.

26.  Plaintiff Hamad Hamdi is a citizen of the State of Kansas.

27.  Plaintiff Gabriel Garcia-Fraire is a citizen of the State of Illinois.

28.  Plaintiff Toriahna Bonds is a citizen of the State of Michigan.

29.  Plaintiff Shane Hanrahan is a citizen of the State of New York.

30.  Plaintiff Kristen Zinselmeier is a citizen of the State of Missouri.

31.  Plaintiff Dan McCullough is a citizen of the State of Georgia.

32.  Plaintiff James Cooper is a citizen of the State of Pennsylvania.

33.  Plaintiff Roseanne Hansen is a citizen of the State of California.

34.  Plaintiff Dusty Derigo is a citizen of the State of Indiana.

35.  Plaintiff Nicole Franklin is a citizen of the State of California.

36.  Plaintiff Dakota Jones is a citizen of the State of California.

37.  Plaintiff John Ray is a citizen of the State of Michigan.

38.  Plaintiff Jonathan Yagel is a citizen of the State of Georgia.

39.  Plaintiff Angel Gonzales is a citizen of the State of California.

40.  Plaintiff Elijah Haydary is a citizen of the State of Illinois.

41.   Plaintiff Michael Estrada is a citizen of the State of California.

42.  Class Plaintiffs, Roseanne Hansen, Jennifer Oh, Christina Bohnstedt, Brooke Hoffman, Micah Bailey, Linda Soltis, Derrick Smith, Kaleb Fajarado,

1  Gwendolyn Raymond, Anthony Herrera, James Roche, Ryan McVey, Matthew

2  Brudnicki, Lindsey Liljenquist, Bethany Lange, Allen Price, Shiloh Irvin, Hamad

3  Hamdi, Anthony Jordan, Jennifer Johnston, Rashon Kyle, Kevin Collins, Michael

4  Spano, James Troxel, Maureen Carney, Gabriel Garcia-Fraire, Toriahna Bonds,

5  Shane Hanrahan, Kristen Zinselmeier, Roseanne Hansen, Dusty Derigo, John Ray,

6  Jonathan Yagel, Angel Gonzales, Elijah, Haydary, and Michael Estrada, by and

7  through their undersigned counsel, hereby file this Class Action Complaint,

8  individually, and on behalf of all others similarly situated—and make these

9  allegations based on information and belief and/or which are likely to have

10  evidentiary support after a reasonable opportunity for further investigation and

11  discovery—against the Defendants, and each of them.

12       43.    Defendant, Scram of California, Inc. is a California corporation with

13  its national headquarters located in Los Angeles, California. Defendant is a local

14  distributer and provider of AMS's devices and services in this District, and

15  elsewhere throughout California. Defendant SCRAM maintains its principal place

16  of business in California. In addition, SCRAM does transact business in California,

17  maintains a website in California, has numerous contracts with State agencies and

18  their principal place of business is located at 402 West Broadway, # 1250, San

19  Diego, California 92101.

20       44.    Defendant, Alcohol Monitoring Systems, Inc., ("AMS") is a Delaware

21  corporation with its national headquarters located in Littleton Colorado. Defendant

22  AMS is a nationwide provider of alcohol monitoring devices and services to state

23  and federal law enforcement agencies. Defendant AMS is registered in California

24  and provides alcohol monitoring services in California, including in this District,

25  and elsewhere throughout the United States. Additionally, AMS is a corporation

26  existing under the laws of the State of Delaware. AMS has a principal place of

27  business located at 1241 W. Mineral Avenue, # 200, Littleton, Colorado, 80120.

28

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. § 1983

45.    Defendant, Los Angeles Alcohol Monitoring, Inc., ("LAAM") is a California Corporation doing business in the State of California and provides alcohol monitoring to individuals throughout the Los Angeles area, and their corporate office is located at 11500 W. Olympic Blvd, Suite # 400, Los Angeles, California, 90064.

46.    Defendant, Florida Safety Council, Inc., ("FSC") is a Florida entity doing business in the State of Florida and provides alcohol monitoring to individuals throughout the Florida area, and their corporate office is located at 1505 E. Colonial Drive, Orlando, Florida 32803.

47.    Defendant, United Safety Council, Inc., ("UNITED") is a Florida entity doing business in the State of Florida, providers alcohol monitoring to individuals throughout the Florida area, and their corporate office is located at 1505 E. Colonial Drive, Orlando, Florida 32803.

48.    Defendant, Etoh Monitoring, LLC., ("ETOH") is a limited liability Corporation doing business in the State of Louisiana and provides alcohol monitoring to individuals throughout the New Orleans area, and their corporate offices are located at 424 Gravier Street, 4th Floor, New Orleans, Louisiana, 70130.

49.    Defendant Recovery Solutions Consulting & Training Corp., ("RSC") is an unknown entity doing business in the State of New York, a provider of alcohol monitoring to individuals throughout the New York area, and their corporate office is located at 4885 Cliffside Drive West, Clarence, New York, 14031.

50.    Defendant Recovery Healthcare Corporation., ("RHC") is a Texas Corporation doing business in the State of Texas, a provider of alcohol monitoring to individuals throughout the Dallas, Texas area, and their corporate office is located at 9090 N. Stemmons Frwy, Suite # A, Dallas, Texas 75247.

51.    Defendant Total Court Services of Nevada, LLC., ("TCS") is a limited liability Corporation doing business in the State of Nevada and provides alcohol monitoring to individuals throughout the Las Vegas Nevada area, and the corporate office is located at 612 South 3rd Street, Las Vegas, Nevada, 89101.

52.    Defendant Sentinel Offenders Services, LLC., ("SENTINEL") is limited liability Corporation doing business in the State of Delaware, with offices in Georgia, and within this District is headquartered in Irvine, California and also provides alcohol monitoring to individuals nationwide. Their agent for service is located at 40 Technology Parkway, Suite # 300, Ben Hill, NORCROSS, Georgia 30092.

53.    Defendant Scram Systems of Illinois, Inc., ("SSI") is a Corporation doing business in the State of Illinois, with offices in Chicage, and within this District, provides alcohol monitoring to individuals nationwide. Their corporate office is located at 208 S. LaSalle Street, Suite # 814, Chicago, Illinois, 60604.

54.    Defendant Court Programs of North America, L.L.C., ("CPONA") is a Corporation doing business in the State of Florida, providing alcohol monitoring to individuals in the Orlando, Florida area. Their corporate office is located at 9951 Atlantic Blvd, Suite # 212, Jacksonville, Florida 32225.

55.    Defendant House Arrest Services, Inc., ("HAS") is a Corporation doing business in the State of Michigan, provides alcohol monitoring to individuals in the States of Michigan, New York, Georgia, and Florida area. Their corporate office is located at 16039 East Nine Mile Road, Eastpointe, Michigan 48021.

56.    Defendant Midwest ADP, Inc., ("MIDWEST") is a Missouri Entity doing business in the State of Missouri. Their corporate office is located at 3923 South Lynn Court, Independence, Missouri 64055.

57.    Defendant Wisconsin Lock & Load Electronic Monitoring Solutions, LLC., ("WISCONSIN") is a limited liability Corporation doing business in the State of Wisconsin, and provides alcohol monitoring to many individuals in the

1   Green Bay area. Their corporate office is located at 1015 Challenger Court, Green

2   Bay, Wisconsin, 54311.

3       58.    Defendant Rocky Mountain Offender Management Systems, L.L.C.,

4   ("RMOMS") is a limited liability Corporation doing business in the State of New

5   York. Their corporate office is located at 8787 Turnpike Drive, # 20, Westminster,

6   Colorado, 80031.

7       59.    Defendant ICU Monitoring Inc., ("ICU") is a Indiana Corporation

8   doing business in the State of Indiana, and provide Scram alcohol monitoring to

9   individuals in various states. Their corporate office is located at 6705 Broadway,

10  Suite # C, Merrillville, Indiana, 46410.

11      60.    Defendant Eastern Missouri Alternative Sentencing Services, Inc.,

12  ("EASTERN") is a Corporation doing business in the State of Missouri, and

13  provides alcohol monitoring to individuals in the Montgomery county area. Their

14  corporate office is located at 8 Westbury Drive, St. Charles, Missouri, 63301.

15      61.    Defendant Advantage Sentencing Alternative Programs, Inc.,

16  ("ASAP") is a Corporation doing business in the State of Maryland, and provides

17  alcohol monitoring to individuals in the Montgomery county area. Their corporate

18  office is located at 25 W. Chesapeake Avenue, Towson, Maryland 21204.

19      62.    Plaintiffs are currently ignorant of the true name(s) and the capacities,

20  whether individual, corporate, associate, or otherwise, of the Defendants sued

21  herein under the fictious names, DOES 1 through 10, inclusive, and therefore, sues

22  such civil Defendants by such fictitious names. Plaintiffs will seek leave to amend

23  this Complaint to allege the true names and capacities of said fictitiously named

24  Doe Defendants, who are legally responsible in some manner for the events and

25  are also sued pursuant to California Code of Civil Procedure Section 474.

26      63.    Plaintiffs are informed and believe and thereon allege that the

27  Defendants, including the fictitious Doe Defendants, were at all times acting as

28  actual agents, conspirators, ostensible agents, partners, joint ventures and/or the

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. § 1983

employees of all other Defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy, or enterprise, and with the express and/or implied permission, with all such knowledge, consent, authorization and ratification of their own co-Defendants. However, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

64.    Whenever the Complaint refers to any act of the Defendants, the allegations shall be deemed to mean the act of those Defendants named in the particular cause of action, and each of them, acting individually, jointly and severally.

## COMMON ALLEGATIONS OF FACT

65.    Defendants are providers of alcohol monitoring services and devices to state and federal law enforcement agencies, courts, as well as various private entities.

66.    The alcohol monitoring device used by Defendants is called the SCRAM Continuous Alcohol Monitoring system (the "SCRAM Device").

67.    The SCRAM Device is approximately the size of a deck of cards and is placed on the wearer's ankle using a strap. The Scram Device is a transdermal monitoring device that was designed to detect and record any instances when the wearer had consumed alcohol by detecting alcohol vapors caused by ingested alcohol diffusing through the skin.

68.    Although most of Defendants' business consists of providing alcohol monitoring services to individuals as part of court mandated rehabilitation programs, as a condition of probation or bond, or other purposes related to the criminal justice system, they are also private vendors of their services.

69.    While Defendants are selected by state and federal agencies and courts to provide monitoring services for defendants charged with a crime and other individuals who become involved in the criminal justice system, it is such

individuals who are ultimately Defendants' customers and choose to purchase Defendants' alcohol monitoring service as an alternative form of monitoring offered by the state or federal agency or court.

70.     Defendants enter into private contracts with each such individual to provide them their alcohol monitoring services, and directly charge them a monthly fee for this service.

71.     Defendants advertise their SCRAM Device as a cost-effective and accurate alternative for law enforcement agencies and courts to track the alcohol usage of at-risk individuals such as those charged with driving under the influence or other crimes relating to consumption of alcohol.

72.     Specifically, the SCRAM Device is meant to be worn 24/7. The wearer is instructed to once-a-day connect the SCRAM Device to a special docking station connected to the internet to upload the monitoring data collected by the device throughout the day. Once the device is connected, the data is sent to a central data center in Colorado operated by AMS. There, the data is reviewed to determine if any monitoring "event" occurred that indicates that the wearer ingested alcohol.

73.     Unlike blood alcohol monitoring that directly detects the level of alcohol present in the blood stream, Defendants' SCRAM Device relies on transdermal alcohol monitoring, which operates by detecting the amount of alcohol that evaporates through the skin. Because the rate at which alcohol evaporates through the skin is significantly different than the rate at which alcohol is metabolized and detected in the blood stream, transdermal alcohol monitoring requires the use of an algorithm to approximate the blood alcohol content of the wearer based on the amount of alcohol vapor detected at the skin surface.

74.     Because transdermal alcohol monitoring measures the amount of alcohol evaporating through the wearers' skin, the SCRAM Device is by its design susceptible to detecting "false-positive" alcohol readings as a result of what

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. § 1983

1  Defendants term to be "environmental alcohol." That is, alcohol vapors that

2  wearer's encounter on an everyday basis that may come in contact with the

3  SCRAM Device.

4      75.    Environmental alcohol takes many forms, and many everyday

5  products contain alcohol that evaporates upon exposure to air and can trigger a

6  SCRAM Device to detect alcohol vapors. For example, body spray, cologne,

7  aftershave, hand sanitizer; household cleaners such as Windex, gasoline, and many

8  other products that most individuals come across on a day-to-day basis contain

9  alcohol that evaporates into the atmosphere.

10     76.    Given the placement of the SCRAM Device against the wearer's skin,

11  on their ankle, and the fact that the SCRAM Device is designed to detect the

12  presence of alcohol in the air surrounding the wearer, any environmental alcohol

13  present near or around the device will lead to the device detecting the presence of

14  alcohol vapors even if the wearer had not ingested any alcohol themselves.

15     77.    Defendants advertise to the public and the governmental agencies

16  with whom they seek to work with, that the SCRAM Device is capable of

17  determining the difference between alcohol vapors that are detected as a result of

18  "ingested alcohol" and alcohol vapors that are detected as a result of

19  "environmental alcohol."

20     78.    Further, the individuals who ultimately purchase Defendants' alcohol

21  monitoring services, are not in any way informed that the SCRAM Device could

22  even register any false-positive test results due to environmental alcohol before

23  making the decision to purchase Defendants' alcohol monitoring service and

24  submit to monitoring via the SCRAM Device.

25     79.    However, Defendants misrepresent the risk of false-positive test

26  results as a result of environmental alcohol. In fact, numerous sources have

27  documented instances of false-positive test results recorded by the SCRAM Device

28  when the wearer was proven to have not consumed any alcohol.

-14-

80.     For example, in one instance a criminal defendant in Oakland County Michigan was fitted with the SCRAM Device as a condition of being released on bond following a car accident. Subsequently, the court was notified of three drinking episodes that were potential violations of the conditions of the bond, and a bond revocation hearing was held. However, at the hearing, the Honorable Dennis Powers of the Novi District Court determined that the SCRAM Device was in fact unreliable and that the events detected were false-positives. Specifically, according to the data recorded by the SCRAM Device, during the first drinking episode the wearer consumed alcohol for 63 consecutive hours and maintained an identical blood-alcohol level at all times—a biological impossibility. The second drinking episode was detected by the SCRAM Device at the exact same time as when the wearer was taking a breath-alcohol test that showed no presence of alcohol whatsoever. The third drinking episode was detected when the wearer was in the hospital, and even though the wearer had not consumed any alcohol whatsoever, the data recorded was identical to data corresponding to some who had internally ingested alcohol. The court rejected the evidence presented by AMS and in particular noted that "the SCRAM tether did not meet the requisite standards of 'reliability' or 'general acceptance' in the relevant scientific community" and that "[t]he body of evidence supplied by the defendant made it clear that the readings by the SCRAM tether were not necessarily the result of prolonged drinking episodes."

81.     As another example, another DUI defendant was ordered by the Court in Ramsey County Minnesota to wear the SCRAM ankle bracelet as a result of a DUI related offense. The SCRAM device is worn as an ankle bracelet which monitors the migration of alcohol through the offender's skin. The measurements are then obtained are converted to a blood-alcohol content which is designated as the TAC, which means Transdermal Alcohol Content.

82.    In this case, on November 9, 2006, the defendant's SCRAM device showed a positive reading for alcohol with a confirmed peak reading .035 TAC. On November 10, 2006, at approximately 6:00 a.m., the defendants SCRAM device showed a positive reading for alcohol with an alleged confirmed peak reading in at .05 TAC. The defendant was notified a week later that he tested positive for alcohol consumption and that a probation violation report would be filed against him. The defendant was notified by their attorney and the defendant got an alcohol test done through a certified medical lab and the results were negative.

83.    In the very case, just as the same facts as each of the Plaintiffs, the Honorable Edward S. Wilson found SCRAM highly unreliable and based on the hearing that was held, the trial Court found that SCRAM was not widely accepted in the scientific community. Further, Judge Edward Wilson also determined that the SCRAM device that the defendant was wearing was not in proper working order on the dates in question. As such, the violation was dismissed.

84.    In a study of the accuracy of transdermal alcohol monitoring utilizing the SCRAM Device, it was similarly noted that the "methodology used by AMS cannot separate ethanol from other contaminating alcohols and therefore is not a reliable method." This is of particular significance because ingested alcohol is specifically comprised of ethanol. Thus, any device intended to measure an individual's blood alcohol content that is not specific to ethanol will detect all types of alcohols, including those that are not ingested by an individual. The SCRAM Device utilizes "fuel cell" technology that creates an electric current when an electrolyte contained within the device comes in contact with chemicals that has a "hydroxyl" group. The chemicals include isopropyl alcohol (rubbing alcohol), antifreeze, and many other "alcohols" such as those previously described above. Because the SCRAM device is not specific to detecting ethanol, any number of other alcohols that are not ingested by the wearer can result in the

Device registering an "alcohol" reading if they come in contact with the device.

85.    Because the SCRAM Device does not directly measure the wearers' blood alcohol content, and is not specific to detecting ethanol, a reading by the SCRAM Device detecting the presence of alcohol vapor is not by itself in any way indicative that the wearer had actually consumed alcohol.

86.    As discussed above, Defendants have to apply an algorithm to determine whether any readings collected by the SCRAM Device actually correspond to what Defendants term a "confirmed alcohol consumption event."

87.    Specifically, Defendants measure the rate at which the alcohol vapor readings detected by the SCRAM Device increase and decrease in order in order to determine whether they match the predicted rate at which alcohol vapors are released as a result of alcohol being metabolized by the human body. In applying their algorithm to determine whether an "alcohol consumption event" occurred, Defendants rely on a general assumption that the rate at which alcohol vapor is released through the skin following the consumption of alcohol falls within a certain range for all individuals, regardless of any distinguishing physiological characteristics (i.e. weight, height, thickness of skin).

88.    Applying this algorithm, Defendants claim to be able to distinguish between alcohol vapor readings caused by "alcohol consumption events" and readings caused by "environmental alcohols," because alcohol vapor readings that are caused by environmental alcohols are supposed to have a significantly different rate at which they increase/decrease in comparison to readings that are caused by ingestion of alcohol.

89.    Because the raw data produced by the SCRAM Device is by itself of limited use in determining whether the wearer actually consumed alcohol, the data has to be sent to AMS' central monitoring facility in Colorado to be analyzed and for AMS' personnel to apply the algorithm and attempt to determine whether an "alcohol consumption event" had occurred.

90.     When a customer of Defendants' alcohol monitoring service connects their SCRAM Bracelet into the internet connected docking station each day, the data collected for that day is sent to AMS for such analysis.

91.     If upon analyzing the data AMS determines that the alcohol vapor readings were caused by an "alcohol consumption event," Defendants inform the law enforcement agency or court exercising jurisdiction over the wearer that based on their analysis of the collected data the individual had consumed alcohol.

92.     However, the individual who was actually wearing the SCRAM Device, is not in any way informed by Defendants or by the device itself that an "alcohol consumption event" had occurred, neither at the time when the SCRAM Device is actually recording the alcohol vapor readings, nor when AMS concludes its analysis of the data and informs the law enforcement agency or the court.

93.     In fact, the SCRAM Device is not designed to, and does not actively inform the wearer in real-time when it is detecting alcohol vapors. Even if the SCRAM Device records alcohol vapor readings continuously for 24 hours, when the wearer connects the SCRAM Device to the docking station to upload the data, the SCRAM Device will simply flash a green light to inform the wearer that the upload was successful.

94.     Because the vast majority of Defendants' customers purchase the transdermal alcohol monitoring service as part of a condition of their bond or probation, a report to a law enforcement agency or judiciary that an individual has been determined to have consumed alcohol will often be considered a violation of the conditions of any such bond or probation and trigger a hearing revoking the bond/probation.

95.     Moreover, because Defendants' customers are not timely notified when the SCRAM Device detects the presence of alcohol vapors, when the data is uploaded daily to AMS, or even when AMS sends a report stating that an "alcohol consumption event" has occurred, the customers often do not discover that they

had supposedly violated the conditions of their bond or probation until several days after the "alcohol consumption event" had occurred.

96.    Once the SCRAM Device sends notice to AMS at their central facility, it is there, that a minimum wage employee with inadequate training and education in these area, reads the report that is oftentimes accompanied with graphs and indicates various TAC readings, dates, and times of any and all alleged drink or tamper events. Once the report is received by AMS, those reports are then held by AMS for three to four days before it is then turned over the SCRAM for review. Once SCRAM allegedly reviews the reports, it is then SCRAM and AMS quickly turn those violation reports over to the Court and the Prosecutors handling the criminal case of the said Scram customer who is charged with the DUI offense.

97.    It is the pattern and practice of the Defendants, and each of them, to intentionally delay sending the alleged violation reports to the Scram customers, and their criminal Defense Attorneys by days, weeks, and even months. The general purpose of the scam is so that the SCRAM wearer does not have an opportunity to seek out options of having traditional blood tests done to show by the preponderance of the evidence that the wearer is innocent.

98.    Thus, Defendants' customers who wish to dispute any finding that they violated the terms of their bond/probation are unable to obtain evidence that could allow them to challenge the revocation of their bond/probation because by the time they are made aware of the potential violation, due to the rate of alcohol metabolism in the human body, Defendants' customers cannot obtain a timely blood or breath alcohol test that could definitively show that they did not consume alcohol at the time indicated by the SCRAM Device.

99.    In addition, the Defendants, and each of them have unconstitutional practices that are often deployed by them. For example, the Defendants will turn over violation reports the day of the alleged SCRAM violation hearing.

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. § 1983

100.   As a classic example, Plaintiff Linda Soltis was charged with an alleged SCRAM violation. Once received, the probation department then sent a copy of the report to the prosecutor handing Ms. Soltis' DUI case. This report was turned over to the probation department and prosecutor several weeks later after the said report was generated.

101.   On the day of the alleged violation hearing, Ms. Soltis and all the other parties were present and the prosecutor handed Ms. Soltis' attorney a copy of the alleged violation report, 15 minutes before the hearing. Additionally, the prosecutor informed Ms. Soltis' attorney that AMS had sent an employee to the hearing, to testify as to the report.  At no time was Ms. Soltis' attorney able to properly cross-examine the AMS witness because he was just notified of the report and the existence of the witness, 15 minutes prior to the Court calling its calendar.

102.   The Plaintiffs in this case, like many other Americans in this Country, enjoy the privileges and immunities of the United States Constitution to petition the Courts, call witnesses on their behalf, the right to cross-examine, and to have a fair hearing, all of which is guaranteed by the United States Constitution.

103.   As a long-standing custom and practice with the Defendants, and each of them, they are given enormous power and deference by various City, County, State, and some Federal agencies and Courts.  In some instances, the Defendants are even given the power by the local Sheriff to setup an office right inside the local County Jail. In another instance, the Defendants are required to appear at a local county jail to fit the Scram client with the ankle monitor. Prior to placing the SCRAM Device on a potential client, the Defendants, and each of them, then charge an exorbitant fee up front, ranging from $150.00 to as much as $400.00. And should the client not have the funds for the set-up fee, the Defendants, and/or each of them, will not send their employee and/or agent to the jail to attach the SCRAM Device until the set-up fee is paid to the Defendant(s). In one instance, a man in Santa Barbara who was arrested for a DUI offense, posted a bail bond to

secure his release, but could not leave the jail until a Scram of California, Inc., employee appeared at the jail to have the SCRAM Device attached to him. That man stayed in jail for four (4) days until the Scram employee arrived, thereby denying the man, his right to be free from unlawful seizure guaranteed by the Fourth Amendment to the United States Constitution.

104.   Among the many other Constitutional violations committed by each of the Defendants, is their violation of their customers' due process rights. When a Plaintiff, such as each of the Plaintiffs in this case, are placed on alcohol monitoring with the Defendants, they will then use the opportunity to collect money from the Plaintiffs, and the members of the Class by detaining the Scram customer in their office to then tell the customer they are under arrest for violating the Scram conditions, then the Defendants, and each of them, threaten to send letters to the Trial Court judges informing the Judge presiding over their DUI matter, that the Scram customer is in violation of their conditions of bond, probation, or parole. Then the Defendants will then send letters to the Scram customer that the Defendants, and each of them, are also reporting them to a debt collector and that services will be terminated.

105.   There are at times when a Scram wearer is unable to afford the high-end set-up fee, or the exorbitant monthly fee, and the wearer cannot make the payment that month. What the Defendants, and each of them fail to inform the wearer, is that the Scram customer may seek a financial reduction sheet from the Defendants that will entitle the Scram customer to pay less based on their income, mortgage, economic expenses, child support, etc.

106.   However, when the Plaintiffs, and the Class have asked for financial reduction sheets, the Defendants, and each of them, tell their clients' no such form exist, or that the employee has never heard of the form. In fact, the form does exist, and in some written government contracts across the United States that a majority Defendants have with government agencies such as the Courts, probation, or even

parole, it states in clauses of that agreement that the client is entitled to a financial reduction if the customer cannot afford the high-end fees. Defendants, and each of them, have violated the rights of the Plaintiffs, and others similarly situated across the United States. By doing this, Defendants, and each of them, have violated the Due Process rights of the Plaintiffs, and all others similarly situated across the United States, under the 14th Amendment to the United States Constitution.

107.   Defendants, and each of them, have perpetuated these Constitutional violations under the color of authority. These Defendants have entered into government contracts with City, State, County, and Federal government agencies. In turn, these agencies provide Defendants with government identification cards, they appear in Court on behalf of the government, transmit reports directly to the Court staff, and they also make special appearances by flying their employees around the globe to testify at the request of these government agencies. Further, Defendants receive large pay outs each year for their alcohol monitoring service.

## CLASS DEFINTITIONS AND RULE 23 PREREQUISITES

Plaintiffs bring this action on their own behalf, and also on behalf of the various classes of all other persons similarly situated, pursuant to Federal Rule 23 of the Federal Rules of Civil Procedure.

**Numerosity:** In accordance with F.R.Civ. P. Rule 23(a), upon information and belief, the Class comprises of thousands of customers throughout the United States, and are so numerous that joinder of all class members of the Class is also impracticable. While the exact number of Class members are presently unknown and can only be ascertained through discovery.

Plaintiffs believe there are thousands of Class members Nationwide based upon the fact that Defendants sell the Scram Devices in all 50 states of the United States, including the territories of Guam, and Puerto Rico, the United Kingdom, Canada, Australia, and New Zealand. There are over 50 persons from each of the Defendants' offices being monitored at any given time, and there is constant

change and turnover in who receives a false positive report. The Plaintiffs are informed and believe, and thereon allege, that the number of persons in each of these classes is at least in the hundreds.

**Ascertainability:** Class members can be easily identified through the Defendants' records or by other means. The identity of the Scram and AMS customers is stored in Scram's and AMS' Monitoring Web Portal. Their identities are also kept on file no matter which third party alcohol provider the customer has service with.

## CLASS ACTION ALLEGATIONS

Plaintiffs bring this action pursuant to the Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and a class defined as follows:

**Nationwide Class:** All individuals nationwide who, from four years prior to the filing of this Complaint through to date of certification purchased, leased and/or rented Defendants SCRAM and AMS' ankle monitoring service.

**Nationwide Class:** All individuals nationwide who, from four years prior to the filing of this Complaint through to date of certification, paid money to the Defendants SCRAM and AMS' for their ankle monitoring service, including but not limited to, set-up fees, ethernet cable fees, upload fees, and battery charge fees.

### COMMON ISSUES OF FACT AND LAW

**In accordance with F.R. Civ. P. Rule 23(a),** there are questions of law and fact common to the class. The common questions of fact include, but are not limited to the following:

a) Whether the Defendants' policies and practices of failing to turn over their Scram reports in a timely manner violates the federal First Amendment of the Right to Petition;

b) Whether the Defendants' policies and practices of failing to turn over

their Scram reports in a timely manner violates the federal Sixth Amendment of the right to call witnesses in criminal proceedings;

c)     Whether the Defendants' policies and practices of collecting financial monies from their customers violates the federal Fourteenth Amendment of the Due Process Clause of the 14th Amendment;

d)     Whether the Defendants' are acting under the color of authority in their business practices;

e)     Whether the Defendants' policies and practices of collecting financial monies from their customers violates the federal Fourteenth Amendment of the Due Process Clause of the 14th Amendment;

f)     Whether the Defendants' conspired with one another to violates the Constitutional rights of the Plaintiffs and all others similarly situated;

g)     Whether the Defendants engaged in the alleged conduct knowingly, intentionally, recklessly, or negligently; and;

h)     Whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for the Class are warranted;

108.    Plaintiffs' claims are typical of the claims of the Class.

109.    Plaintiffs' will fairly and adequately represent and protect the interests of the Class.

110.    Plaintiffs have retained counsel competent and experienced in complex class actions and employment discrimination litigation.

111.    Class certification is appropriate pursuant to **Federal Rule of Civil Procedure 23(b)(2)** because Defendants has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.  The Class Members are entitled to injunctive relief to end the Defendants constitutional, common, uniform, unfair, and discriminatory policies and practices.

112.    Class certification is also appropriate pursuant to Federal Rule of Civil

Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class Members have been damaged and are also entitled to recovery as a result of Defendants constitutional, despicable, common, unfair, and discriminatory policies and practices. Defendants have computerized account data, payroll data, and personnel data that will make calculation of damages for specific Class Members relatively simple. The propriety and amount of punitive damages are based on Defendants conduct, making these issues common to the Class.

113.   **Typicality: In accordance with F.R. Civ. P. Rule 23(a),** the claims of the representative Plaintiffs are typical of each class. Plaintiffs were subjected to jail time, loss of liberty and loss of thousands of dollars in attorney fees, and lost income, based on the Constitutional violations of the Defendants.

114.   Thus, the Plaintiffs have the same interests, and have suffered the same type of damages as the class members. Named Plaintiffs' claims are based upon the same or similar legal theories as the claims of the class members. Each class member suffered actual damages as a result of the Defendants' Constitutional violations. The actual damages suffered by Plaintiffs are similar in type and amount to the actual damages suffered by each class member.

115.   **In accordance with F.R. Civ. P. Rule 23(a),** the Named Plaintiffs will fairly and adequately protect the interests of the class. The interests of the Named Plaintiffs are consistent with and not antagonistic to the interests of the class.

116.   **Maintenance and Superiority:   In accordance with Fed.R.Civ.P. Rule 23(b)(1)(A),** prosecutions of separate actions by individual members of the class would create a risk that inconsistent or varying adjudication with respect to individual members of the class would establish incompatible standards of conduct for the parties opposing the class.

117.   **In accordance with Fed.R.Civ.P. Rule 23(b)(1)(B),** prosecutions of Separate actions by individual members of the class would create a risk of Adjudications with respect to individual members of the class that would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

118.   **In accordance with Fed.R.Civ.P. Rule 23(b)(2)**), Plaintiffs are informed and believe, and thereon allege that Defendants have acted on grounds fully generally applicable to the class.

119.   In accordance with Fed.R.Civ.P. Rule 23(b)(3), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties. The interests of class members in individually controlling the prosecution of a separate action is low in that most class members would be unable to individually prosecute any action at all. The amounts at stake for individuals are such that separate suits would be impracticable in that most members of the class will not be able to find counsel to represent them. It is desirable to concentrate all litigation in one forum because all of the claims arise in the same location. It will promote judicial efficiency to resolve the several common questions of law and fact in one forum rather than in multiple courts. Because the discrimination alleged herein is systemic, it is particularly well suited to resolution on a class basis, as the critical questions in the case may be answered on a class, wide basis.

120.   Plaintiffs do not know the identities of the class members. The Plaintiffs are informed and believe, and thereon allege, that the identities of the class members are ascertainable from SCRAM records, in particular the SCRAM computer systems used to track and identify SCRAM clients. Plaintiffs are hereby informed and believes, and thereon allege, that the SCRAM computer records reflect the identities, including addresses and telephone numbers, of the persons

-26-

who have been using SCRAM Device.

121.   Plaintiffs do not know of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The class action is superior to any other available means to resolve the issues raised on behalf of the classes. The class action will be manageable because so many different records systems exist from which to ascertain the members of the class and to ascertain some of the proof relevant to Plaintiffs claims. Liability can be determined on a class-wide basis, based on class-wide evidence because the Plaintiffs complain of systemic and widespread defective products and equipment.

122.   **In accordance with Fed.R.Civ.P. Rule 23(b)(3),** class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Plaintiffs are informed and believe that SCRAM computer records contain a last known address for class members. Plaintiffs' contemplate that individual notice be given to class members at such last known address by first class mail. Plaintiffs contemplate that the notice informs class members of the following:

A.   The pendency of this action, and the issues common to the class;

B.   The nature of the action;

C.   Their right to 'opt out' of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

D.   Their right, if they do not 'opt out,' to be represented by their own counsel and enter an appearance in the case; otherwise, they will be represented by the named Plaintiffs and their counsel; and

E.   Their right, if they do not 'opt out,' to share in any recovery in favor

of the class, and conversely to be bound by any judgment on the common issues, adverse to the class.  Plaintiffs restates and incorporates by reference each of the foregoing and ensuing paragraphs in each of the following causes of action as if each paragraph was fully set forth therein.

## FIRST CLAIM FOR RELIEF

### (Violation of Federal Civil Rights Act of 1964, 42 U.S.C. § 1983 *et seq.*)

### (On Behalf of Plaintiffs and the Class v. All Defendants

123.    Plaintiffs incorporate the preceding paragraphs as alleged above.

124.    The Defendants acting under color of authority, when they violated the Plaintiffs, and the Class' well established rights guaranteed by the First, Sixth, and Fourteenth Amendments to the United States Constitution, the Civil Rights act of 1964, and the laws of the United States, by the acts alleged above.

125.    42 U.S.C. § 1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit at equity or other proper proceeding for redress.

126.    Defendants and each of them, who was at all times, acting under color of authority, deprived the Plaintiffs, and the Class of their rights, privileges, and immunities secured by the Constitution and laws of the United States including the First, Sixth, and Fourteenth Amendments by:

a.      delaying in turning over exculpatory evidence that the Defendants, and each of them, knew and had reason to know, would be favorable to the Plaintiffs innocence;

b.      Interfering with the Plaintiffs right to calls witnesses on their behalf and obtain blood tests in a timely manner guaranteed by the Sixth, and Fourteenth Amendments;

c.    The Defendants, and each of them, using dirty, unlawful, and illegal means of collecting monies from the Plaintiffs, and the Class;

127.    As a direct and proximate result of the aforementioned acts of the said Defendants, Plaintiffs was, and still is, injured as set forth above, and is entitled to compensatory and punitive damages according to proof. In addition, Plaintiffs the Plaintiffs are entitled to an award of punitive damages.

### SECOND CLAIM FOR RELIEF

### (Violation of Federal First Amendment, 42 U.S.C. § 1983 *et seq.*)

### (On Behalf of Plaintiffs and the Class v. All Defendants

128.    Plaintiffs incorporate the preceding paragraphs as alleged above.

129.    This claim is brought by Plaintiffs on behalf of themselves and the Class they seek to represent.  Plaintiffs have been charged with alleged Scram violations in a criminal Court of law that effects the criminal cases, conditions of their bail bond, as well as their conditions of probation.

130.    The Defendants, and each of them, acting under the color of authority, knowingly and intentionally fail to turn over alleged Scram violations reports in a timely manner that is mandated by State and Federal law. The Defendants intentional acts of failing to turn over exculpatory evidence, denies the Plaintiffs, and the Class enough notice to properly defend themselves against any alleged Scram report by allowing Plaintiffs, and the Class, to seek blood tests that would refute the Defendants allegations that they consumed alcohol. Defendants, and each of them, delay by weeks, or even months in turning over alleged consumption reports to the Plaintiffs, the Class, and their attorneys.

131.    Therefore, the Defendants conduct is unconstitutional on its own face and in clear violation of the federal First Amendment right for the Plaintiffs and the Class to petition the Courts to seek exoneration of the false allegations.

132.    At all times relevant, the Defendants, and each of them, were acting

under the color of authority when they denied the Plaintiffs and the Class of their Constitutional rights.

133.   Defendants' true purpose for delaying in turning over their reports to the Plaintiffs, and the Class, is an elaborate attempt to show that the Plaintiff, the Class, and others similarly situated, have consumed alcohol, when in fact they have not. Defendants intentionally delay in turning over their reports to bolster their products to government agencies to establish government contracts.

134.   As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief, nominal and punitive damages.

### THIRD CLAIM FOR RELIEF

### (Violation of Federal Sixth Amendment, 42 U.S.C. § 1983 *et seq.*)

### (On Behalf of Plaintiffs and the Class v. All Defendants

135.   Plaintiffs incorporate the preceding paragraphs as alleged above.

136.   The Defendants acting under color of authority, when they violated the Plaintiffs, and the Class' well established rights guaranteed by the First, Sixth, and Fourteenth Amendments to the United States Constitution, the Civil Rights act of 1964, and the laws of the United States, by the acts alleged above.

137.   The Sixth Amendment States in relevant part:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his (or her) defense.

138.   By the Defendants policies and practices of failing to turn over their Scram reports in a timely fashion does violate the Sixth Amendment to the United

States Constitution. As a result of this misconduct, the Defendants, and each of them acted under color of law, deny the Plaintiffs, and the Class, their right to call witnesses on their behalf, and to be able to cross examine witnesses.

139.   At all times relevant, the Defendants, and each of them, acting under the color of authority, intentionally interfered with the Plaintiffs' rights to call any and all witnesses, and cross examine any defense witnesses. Defendants recklessly, intentionally, and in complete disregard for the rights of the Plaintiffs, interfered with those Constitutional rights.

140.   As a direct and proximate result of Defendants' violation of the Sixth Amendment, Plaintiffs, and the Class, have suffered, and continue to suffer severe irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief, nominal and punitive damages.

## **FOURTH CLAIM FOR RELIEF**

### **(Violation of Federal Fourteenth Amendment, 42 U.S.C. § 1983 *et seq.*)**

### **(On Behalf of Plaintiffs and the Class v. All Defendants**

141.   Plaintiffs incorporate the preceding paragraphs as alleged above.

142.   The Defendants acted under color of authority, when they violated the Plaintiffs, and the Class' well established rights guaranteed by the First, Sixth, and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1964, and the laws of the United States, by the acts alleged above.

143.   The Fourteenth Amendment to the United States Constitution, is enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

144.   The Due Process Clause prohibits the Defendants acting under the color of authority from subjecting individuals to processes and penalties that fail to comport with principles of due process and fundamental fairness.

145.   The United States Supreme Court has repeatedly held that punishing a

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. § 1983

1  person solely for his or her inability to pay, rather than willful refusal to pay, or

2  make bona fide efforts to acquire the resources to pay, violates principles of due

3  process and fundamental fairness.

4      146.   Punishing an individual solely for his or her inability to pay, violates

5  principles of due process and fundamental fairness.

6      147.   At all times relevant, the Defendants, and each of them, acting under

7  the color of authority, intentionally interfered with the Plaintiffs, and the Class'

8  right to pay lower amounts of monthly service costs to the Defendants, and each of

9  them for their alcohol monitoring services.

10     148.   As a direct and proximate result of Defendants' actions, Defendants,

11  and each of them, are in violation of the Fourteenth Amendment. Plaintiffs, and the

12  Class, have suffered, and continue to suffer severe irreparable harm, including the

13  loss of their constitutional rights, entitling them to declaratory and injunctive relief,

14  nominal and punitive damages.

15                          **PRAYER FOR RELIEF**

16  **WHEREFORE,** Plaintiffs, and on behalf of the Class, pray for an Order as

17  follows:

18      A.     Certification of the case as a class action on behalf of the proposed

19  Class;

20      B.     Designating Plaintiffs as representatives of the Class, and their

21  undersigned counsel as Class Counsel;

22      C.     A declaratory judgment that the principles complained of herein are

23  unlawful and violate 42 U.S.C. § 1983, the First, Sixth, and Fourteenth

24  Amendments to the United States Constitution;

25      D.     Entering judgment in favor of Plaintiffs and the Class, against the

26  Defendants, jointly and severally;

27      E.     Ordering disgorgement of the money that Plaintiffs and the Class paid

28  to the Defendants alcohol monitoring service, and awarding the disgorged money

as restitution damages to Plaintiffs and the Class, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

F.      A preliminary and permanent injunction against Defendants, and each of them, and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against the Plaintiffs or the Class because of their gender, financial status, or participation in this lawsuit;

G.      An order requiring Defendants to pay restitution of all amounts owed to the Plaintiffs by the Defendants;

H.      For general and special damages in an amount according to proof;

I.      For an award of reasonable attorney fees pursuant to 42 U.S.C. § 1981A;

J.      For an award of punitive damages against the Defendants pursuant to 42 U.S.C. § 1981A(b)(1);

K.      For costs of suit pursuant to Fed.R.Civ.P. 54(d), 28 U.S.C. § 1920 and Cal. Civ. Code § 1032;

L.      An award to Plaintiffs and the Class of such other and further relief as this Court deems just and proper.

Dated:        July 28, 2017            By:  S/ Edwin I. Aimufua, Esq._____

Edwin I. Aimufua, Esq., SBN: 186986
LAW OFFICES OF EDWIN I. AIMUFUA
17000 Ventura Blvd, Suite # 201
Encino, California 91316

*Attorneys for Plaintiffs Jennifer Oh, Christina Bohnstedt, Brooke Hoffman, Micah Bailey, Linda Soltis, Derrick Smith, Kaleb Fajarado, Gwendolyn Raymond, Anthony Herrera, James Roche, Ryan McVey, Matthew Brudnicki, Lindsey Liljenquist, Bethany Lange, Allen Price, Shiloh Irvin, Hamad Hamdi, Anthony Jordan, Jennifer Johnston, Rashon Kyle, Kevin Collins, Michael Spano, James Troxel, Maureen Carney, Gabriel Garcia-Fraire, Toriahna Bonds, Shane Hanrahan, Kristen Zinsselmeier, James*

*Cooper, Roseanne Hansen, Dusty Derigo, Nicole Franklin, Dakota Jones, John Ray, Jonathan Yagel, Angel Gonzeles, Elijah Yagel, Mike Estrada, on their own behalf, and on behalf of all others similarly situated.*

## **JURY TRIAL DEMANDED**

Plaintiffs are entitled to, and demand, a trial by jury pursuant to the Seventh Amendment to the United States Constitution.

Dated:      July 28, 2017            By:  S/ Edwin I. Aimufua, Esq.

Edwin I. Aimufua, Esq., SBN: 186986
LAW OFFICES OF EDWIN I. AIMUFUA
17000 Ventura Blvd, Suite # 201
Encino, California 91316
(818) 855-1118 (Telephone)
(818) 855-1101 (Facsimile)
eia@aimufualaw.com

*Attorneys for Plaintiffs Jennifer Oh, Christina Bohnstedt, Brooke Hoffman, Micah Bailey, Linda Soltis, Derrick Smith, Kaleb Fajarado, Gwendolyn Raymond, Anthony Herrera, James Roche, Ryan McVey, Matthew Brudnicki, Lindsey Liljenquist, Bethany Lange, Allen Price, Shiloh Irvin, Hamad Hamdi, Anthony Jordan, Jennifer Johnston, Rashon Kyle, Kevin Collins, Michael Spano, James Troxel, Maureen Carney, Gabriel Garcia-Fraire, Toriahna Bonds, Shane Hanrahan, Kristen Zinsselmeier, James Cooper, Roseanne Hansen, Dusty Derigo, Nicole Franklin, Dakota Jones, John Ray, Jonathan Yagel, Angel Gonzeles, Elijah Yagel, Mike Estrada, on their own behalf, and on behalf of all others similarly situated.*

PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. § 1983